IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **LINDA HEARN,** | : | **Civil No. 3:13-CV-1229** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **CAROLYN COLVIN, ACTING** | : | |
| **COMMISSIONER OF** | : | |
| **SOCIAL SECURITY** | : | |
| | : | |
| **Defendant.** | : | |

## MEMORANDUM  OPINION

### I.    Statement of Facts and of the Case

#### A.    Introduction

In this case we are asked to evaluate an Administrative Law Judge's (ALJ) decision denying social security disability benefits to the plaintiff, Linda Hearn. In Ms. Hearn's case, this ALJ decision was made against a factual backdrop marked by conflicting evidence relating to the nature, severity and disabling effect of Ms. Hearn's emotional and medical conditions.  Much of this evidence, and particularly the testimony of the claimant Ms. Hearn, actually seemed to contradict and undermine this disability claim.  Upon consideration of this evidence, for the reasons set forth

below, we conclude that the ALJ's decision is supported by substantial evidence which is adequately explained on the record and, therefore, this decision will be affirmed.

## B.    Hearn's Medical and Employment History

On February 3, 2010, Linda Hearn applied for Social Security Disability Insurance Benefits ("DIB") under Title II, of the Social Security Act, alleging that she could no longer work any job in the national economy since May 1, 2008, the date when she had been laid off of from her last clerical job.  According to Hearn she had become disabled due to the cumulative effects of joint pain in her shoulders, elbows, hips and knees.  (Tr. 200-213.)  Hearn reported that this pain, coupled with diabetes and an attention deficit disorder, left her wholly disabled.  (Id.)  At the time the alleged onset of this disability, Hearn was 55 years old, which is defined as a "person of advanced age," had a high-school diploma and a bachelor's degree in elementary education, and had a significant prior work history in a variety of clerical occupations, a work history that had drawn to a close when she had been laid off from her last job in May, 2008. (Tr. 10, 34-35, 57, 178.)

### 1.    Hearn's Testimony Regarding Her Condition

On July 12, 2011, Hearn appeared and testified at a disability hearing conducted by an Administrative Law Judge (ALJ), who was assigned to assess her

2

disability claim.  In this testimony, Hearn confirmed that she suffered from the ailments which she had initially documented in her disability application, but described those ailments in ways which often undermined her claims of total disability. (Tr. 33-56.) Thus, under questioning by the ALJ Hearn explained that she had claimed an onset of disability beginning on the date upon which she was laid off from her last job.  (Tr. 35.)  When asked about the coincidental timing of this lay-off and her disability application onset date, Hearn acknowledged that if she had not been laid off she would have continued to work at the sedentary, clerical job she had held in the Spring of 2008.  (Id.)  Thus, Hearn seemed to attest to an ability to continue working at her prior employment even after the claimed date of the onset of her disability, May 1, 2008.

Hearn also described her medical and mental limitations in a fashion which seemed to be less than totally disabling.  For example, with respect to her diabetes, Hearn described her condition in terms which disclosed that this condition was controlled to a degree that was nearly optimal and stated that her physicians were pleased with her diabetes control.  (Tr. 38-41.)  As for her joint pain, while Hearn claimed pain in her shoulders, hips and knees, she acknowledged that she had not yet disclosed the hip pain to her primary treating physicians at the VA.  (Tr. 36-39.)  Hearn further stated that she treated the pain through Ibuprofen, and periodic

cortisone injections in her knees and shoulders every six months.  According to Hearn, this treatment, and particularly these injections, helped a lot, and relieved her pain a good bit.  (Id.)  Furthermore, Hearn stated that she was able to treat her attention deficit disorder through herbal medications like gingko biloba and Hawthorn berry tea, herbal cures which allowed her to concentrate better.  (Tr. 42-43.)

Hearn also described a level of physical activity which was not entirely consistent with a finding of complete and total disability, stating that she participated in exercise programs at the VA, (40-41.), was able to lift between 10 and 20 pounds, (Tr. 44.), walk laps for 15 minutes at a time, (Tr. 44.), and perform various household tasks.  (Tr. 44-46.)

### 2.    Other Medical Evidence

The other objective medical evidence provided to the ALJ also confirmed in large measure the non-disabling nature of Hearn's medical conditions, casting those conditions in terms similar to those described by Hearn herself in her ALJ hearing. These medical records revealed that Hearn had been receiving on-going treatment at the VA Medical Center for obesity and joint disease since 2009.  However, by December 2009, Hearn was able to perform hamstring, quadriceps, and calf stretching exercises for 20 minutes, with 1000 steps at a 5/10 workload.  (Tr. 913.)  Hearn was

4

also receiving periodic injections in her joints and reported that she was able to get around much better since beginning these injections in her knees. (Tr. 921.)

Throughout 2010, these medical records reveal that Hearn was participating in physical therapy at the VA Medical Center, (Tr. 921.), was making dietary and lifestyle changes to improve her health, (Tr. 905.), and was engaging in a home exercise program. (Tr. 912.) These records also disclosed that Hearn and her care givers were electing to treat her condition conservatively. Thus, on April 12, 2010, Rex Herbert, M.D., an orthopedic surgeon, advised that Hearn did not need knee replacement surgery, (Tr. 898.), since she was receiving injections for her knees, which she said "really helped." (Tr. 897). These findings, coupled with X-rays of Hearn's knees, led to a diagnosis of only mild degenerative joint disease in the bilateral knees. (Tr. 897-98.)

While Hearn continued to periodically complain of shoulder and knee pain in 2010, (Tr. 956.), she tolerated her exercise sessions well (Tr. 956.), had increased motivation, reported having less pain, and made "a vast improvement" throughout 2010. (Tr. 956.) Consequently by November 2010, while Hearn complained of bilateral shoulder pain, she indicated that she did not want any type of surgery on her shoulder, (Tr. 1015.), and displayed only some mild pain on range of motion with

fairly decent rotator cuff strength when abducting the arms against resistance. (Tr. 1015.)

Throughout 2011, Hearn's medical records continued to document an ability to engage in some gainful activity. Thus, in January 2011, Hearn reported attending the Harrisburg Farm Show for approximately eight hours. (Tr. 999.) Hearn's liver enzymes were reported as normal. (Tr. 988.) A neurological examination was also essentially normal, with maximum motor strength throughout. (Tr. 989.) An MRI of the brain showed only age-related changes, (Tr. 988.) and Hearn was diagnosed with mild diabetic polyneuropathy. (Tr. 989.)

Hearn continued to receive periodic joint injections, which provided good relief for about six or seven months each time, during 2011. (Tr. 1093.) An examination of plaintiff's shoulders in May 2011 showed no erythema, warmth, swelling, or deformity, with only slight pain upon active and passive forward flexion and abduction in both shoulders, and good rotator cuff strength when abducting her arm against resistance. (Tr. 1083.) By June 2011, Hearn reportedly had lost a good deal of weight. (Tr. 1073.) While she experienced pain with exercise, she was able to perform all of her exercises, and reported feeling stronger with some decrease in overall pain. (Tr. 1073.)

### 3.   **Opinion Evidence**

In addition to Hearn's own equivocal testimony, and the medical records which reflected conservative and generally successful treatment of her medical conditions, the ALJ was provided with medical opinion evidence to consider.  This evidence also presented an equivocal and contradictory picture of Hearn's physical condition, with substantial opinion evidence supporting the conclusion that she was not disabled. Thus,  on June 3, 2010, a state agency physician conducted an evaluation of Hearn's medical condition based upon her documented treatment records.  This evaluation concluded  that Hearn could lift 20 pounds occasionally and 10 pounds frequently; could stand or walk for about six hours, and sit for about six hours, in an eight-hour workday; could push and pull with no further limitations; could occasionally climb ramps and stairs, kneel, crouch, and crawl; could frequently balance and stoop; and but should never climb ladders, ropes, or scaffolds.  (Tr. 835)  Hearn could also occasionally reach above shoulder level bilaterally.  No other limitations were noted. (Tr. 836-37.)  Likewise, a psychiatric review technique form (PRTF) completed by a state agency psychologist indicated no medically determinable mental impairments. (Tr. 842.)

In contrast, two physician assistants who were treating Hearn provided more guarded assessments of Hearn's capabilities.  On June 29, 2011, Karen A. Rogers, a

physician's assistant, submitted a medical source statement in which she opined that Hearn could lift less than 10 pounds, stand or walk for at least two hours in an eight-hour workday (Tr. 1124.); had unspecified limitations in sitting and pushing and pulling due to her impairments (Tr. 1125.); could never perform any postural movements (Tr. 1125.); and had some manipulative and environmental limitations. (Tr. 1126-27.)  These physician assistant medical findings, in turn, were contradicted in some respects by a second medical source statement from another physician's assistant, dated July 11, 2011, (Tr. 1129-32.), which indicated that Hearn could lift 10 pounds occasionally, less than 10 pounds frequently; could stand or walk for less than two hours in an eight-hour workday, but  must periodically alternate sitting and standing to relieve pain; (Tr. 1129.) had no pushing and pulling limitations; (Tr. 1130.); had some postural limitations (Tr. 1130.); and had no manipulative or environmental limitations.  (Tr. 1131-32.)

## C.   The ALJ Hearing and Decision

It was against the backdrop of this equivocal record regarding Hearn's physical condition that the ALJ conducted a hearing on July 11, 2011.  (Tr. 29-68.)  At this hearing, Hearn testified, providing a mixed and equivocal account of the degree to which her medical conditions were wholly disabling.  (Tr. 33-56.)  A vocational expert (VE) also testified.  (Tr. 57-68.)  In this VE testimony, the expert addressed a

series of hypothetical questions posited by the ALJ, hypotheticals which incorporated various of the medical conditions and limitations identified by Hearn.  In only one of the scenarios presented by the ALJ, the severe set of limitations identified by Physician Assistant Rogers, did the VE opine that Hearn would be wholly disabled. In all other instances the VE testified that Hearn could return to sedentary clerical work of a type similar to that which she had performed in the past.

On September 19, 2011, the ALJ issued his decision denying Hearn's application for benefits. (Tr. 7-22.) After reviewing the conflicting and contradictory medical evidence, (Tr. 12-18.) the ALJ found that Hearn suffered from the following conditions that, while severe, did not meet any of the listing criteria which would qualify Hearn for benefits at step three of the five step Social Security disability assessment process:  obesity, diabetes, bilateral knee and shoulder impairment. (Tr. 12.)  The ALJ further concluded that Hearn retained the ability to perform sedentary work, with limitations on kneeling, climbing stairs and ramps, and reading above shoulder level bilaterally. (Tr. 15.) This residual functional capacity assessment was consistent with the objective medical records provided to the ALJ, the medical consultant opinion based upon a review of these records, and Hearn's reported activities of daily living. (Tr. 16-18.)  This RFC assessment, however, did not embrace the most severe set of limitations cited by the various physician assistants.

Instead, the ALJ gave these physician assistant opinions little weight, noting that the restrictions reported in these opinions were inconsistent with objective medical data. (Tr. 17.)

Having made these findings the ALJ then concluded at step 4 of the analytical process that Hearn could return to her former sedentary and clerical work. (Tr. 18.) Therefore, the ALJ found that Hearn was not disabled and denied her application for disability benefits. (Id.)

This appeal followed. (Doc. 1.) The parties have now fully briefed this matter, with the plaintiff first arguing on appeal that the ALJ erred in failing to give appropriate weight to the opinion of Hearn's treating physicians. While this argument is cast as a claim that the ALJ failed to follow the opinion of treating physicians regarding disability, in fact, the opinions offered here were not physician opinions but rather were the opinions of two physician assistants. In addition, Hearn argues on appeal that the ALJ erred in the formulation of hypothetical questions to the vocational expert, and also incorrectly assessed Hearn's subjective complaints. (Doc. 14.) The Commissioner has responded to these arguments, (Doc. 17.), and this case is now ripe for resolution.

For the reasons set forth below we find that substantial evidence supports the ALJ findings in this case; that those findings are adequately explained on the record;

and that the findings reflect an appropriate assessment of all of the medical evidence. Therefore, it is recommended that this appeal be denied.

## II.   Discussion

### A.   Standards of Review–The Roles of the Administrative Law Judge and This Court

Resolution of the instant social security appeal involves an informed consideration of the respective roles of two adjudicators–the administrative law judge (ALJ) and this Court.  At the outset, it is the responsibility of the ALJ in the first instance to determine whether a claimant has met the statutory prerequisites for entitlement to benefits.  To receive disability benefits, a claimant must present evidence which demonstrates that the claimant has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 432(d)(1)(A).  Furthermore,

> [a]n individual shall be determined to be under a disability only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [she] lives, or whether a specific job vacancy exists for [her], or whether [she] would be hired if [she] applied for work.  For purposes

of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

In making this determination the ALJ employs a five-step evaluation process to determine if a person is eligible for disability benefits. See 20 C.F.R. § 404.1520. See also Plummer v. Apfel, 186 F.3d 422, 428 (3d Cir. 1999). If the ALJ finds that a plaintiff is disabled or not disabled at any point in the sequence, review does not proceed any further. See 20 C.F.R. § 404.1520. As part of this analysis the ALJ must sequentially determine:  (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant's impairment prevents the claimant from doing past relevant work; and (5) whether the claimant's impairment prevents the claimant from doing any other work. See 20 C.F.R. § 404.1520.

This disability determination also involves shifting burdens of proof.  The initial burden rests with the claimant in steps one through four to demonstrate that he is unable to engage in past relevant work.  If the claimant satisfies this burden, then the Commissioner must show that jobs exist in the national economy that a person

with the claimant's abilities, age, education, and work experience can perform. <u>Mason v. Shalala</u>, 994 F.2d 1058, 1064 (3d Cir. 1993).

The ALJ's disability determination must also meet certain basic procedural and substantive requisites.   Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination.  Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." <u>Cotter v. Harris</u>, 642 F.2d 700, 704 (3d Cir. 1981).  Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. <u>Id</u>. at 706-707.  In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." <u>Schaudeck v. Com. of Soc. Sec.</u>, 181 F. 3d 429, 433 (3d Cir. 1999).

Once the ALJ has made a disability determination, it is then the responsibility of this Court to independently review that finding.  In undertaking this task, this Court applies a specific, well-settled and carefully articulated standard of review.  In an action under 42 U.S.C. § 405(g) to review the decision of the Commissioner of Social Security denying plaintiff's claim for disability benefits, Congress has specifically provided that the "findings of the Commissioner of Social Security as to

any fact, if supported by substantial evidence, shall be conclusive[.]" 42 U.S.C. § 405(g).

The "substantial evidence" standard of review prescribed by statute is a deferential standard of review. Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004). When reviewing the denial of disability benefits, we must simply determine whether the denial is supported by substantial evidence. Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988); see also Johnson v. Commissioner of Social Sec., 529 F.3d 198, 200 (3d Cir. 2008). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999)." Johnson, 529 F.3d at 200. See also Pierce v. Underwood, 487 U.S. 552 (1988). It is less than a preponderance of the evidence but more than a mere scintilla of proof. Richardson v. Perales, 402 U.S. 389, 401 (1971). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999)(quoting Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995).

A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). However, in an adequately developed

factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the decision] from being supported by substantial evidence." Consolo v. Federal Maritime Comm'n, 383 U.S. 607, 620 (1966). Moreover, in conducting this review we are cautioned that "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility.' Walters v. Commissioner of Social Sec., 127 F.3d 525, 531 (6th Cir.1997); see also Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 801 (10th Cir.1991) ('We defer to the ALJ as trier of fact, the individual optimally positioned to observe and assess witness credibility.')." Frazier v. Apfel, No. 99-715, 2000 WL 288246, *9 (E.D. Pa. March 7, 2000). Furthermore, in determining if the ALJ's decision is supported by substantial evidence the court may not parse the record but rather must scrutinize the record as a whole. Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981).

## B.   The ALJ's Decision Was Supported By Substantial Evidence

Judged against this deferential standard of review we find that the ALJ's disability decision in this case was supported by "substantial evidence" and, therefore, may not now be disturbed.  Indeed, given the many conflicting and

contradictory threads in the evidence presented to the ALJ, this ruling reflects a thorough, careful, balanced analysis of the proof.  It is, therefore, the paradigm of a decision which draws carefully upon substantial evidence.

Having reached this conclusion, we discuss the separate claims of error advanced by Hearn in this appeal.

### 1.   The ALJ's Credibility Assessment is Supported by Substantial Evidence

At the outset, contrary to the plaintiff's assertion, we find that substantial evidence supports the ALJ's determination that Hearn's t]estimony regarding the degree and persistence of her pain was not fully credible is supported by substantial evidence.  In this regard, we begin by observing that:  "[A]lthough '[t]estimony of subjective pain and inability to perform even light work is entitled to great weight,' Dobrowolsky v. Califano, 606 F.2d 403, 409 (3d Cir.1979), an ALJ may nonetheless reject a claim of disabling pain where he 'consider[s] the subjective pain and specif[ies] his reasons for rejecting these claims and support[s] his conclusion with medical evidence in the record.'  Matullo v. Bowen, 926 F.2d 240, 245 (3d Cir.1990)." Harkins v. Comm'r of Soc. Sec., 399 F. App'x 731, 735 (3d Cir. 2010).

Where a disability determination turns on an assessment of the level of a claimant's pain, the Social Security Regulations provide a framework under which

a claimant's subjective complaints are to be considered.  20 C.F.R. § 404.1529.  Such

cases require the ALJ to "evaluate the intensity and persistence of the pain or

symptom, and the extent to which it affects the individual's ability to work."

Hartranft v. Apfel, 181 F.3d 358, 362 (3d Cir. 1999).  Cases involving an assessment

of subjective reports of pain "obviously require[ ]" the ALJ "to determine the extent

to which a claimant is accurately stating the degree of pain or the extent to which he

or she is disabled by it."  Id.  In making this assessment, the ALJ is guided both by

statute and by regulations.  This guidance eschews wholly subjective assessments of

a claimant's disability.  Instead. at the outset, by statute the ALJ is admonished that

an "individual's statement as to pain or other symptoms shall not alone be conclusive

evidence of disability as defined in this section; there must be medical signs and

findings, established by medically acceptable clinical or laboratory diagnostic

techniques, which show the existence of a medical impairment that results from

anatomical, physiological, or psychological abnormalities which could reasonably be

expected to produce the pain or other symptoms alleged and which, when considered

with all the evidence. . . , would lead to a conclusion that the individual is under a

disability."  42 U.S.C. § 423(d)(5)(A).

Applying this statutory guidance, the Social Security Regulations provide a

framework under which a claimant's subjective complaints are to be considered.  20

C.F.R. § 404.1529.  Under these regulations, first, symptoms, such as pain, shortness of breath, and fatigue, will only be considered to affect a claimant's ability to perform work activities if such symptoms result from an underlying physical or mental impairment that has been demonstrated to exist by medical signs or laboratory findings.  20 C.F.R. § 404.1529 (a)-(c).  Once a medically determinable impairment which results in such symptoms is found to exist, the Commissioner must evaluate the intensity and persistence of such symptoms to determine their impact on the claimant's ability to work. 20 C.F.R. § 404.1529 (a)-(c).  In so doing, the medical evidence of record is considered along with the claimant's statements.  20 C.F.R. § 404.1529 (a)-(c).  Social Security Ruling 96-7p gives the following instructions in evaluating  the credibility of the claimant's statements regarding his symptoms:  "In general, the extent to which an individual's statements about symptoms can be relied upon as probative evidence in determining whether the individual is disabled depends on the credibility of the statements.  In basic terms, the credibility of an individual's statements about pain or other symptoms and their functional effects is the degree to which the statements can be believed and accepted as true.  When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements."  SSR 96-7p. SSR 96-4p provides that "Once the existence of a medically determinable

physical or mental impairment(s) that could reasonably be expected to produce the pain or other symptoms alleged has been established on the basis of medical signs and laboratory findings, allegations about the intensity and persistence of the symptoms must be considered with the objective medical abnormalities, and all other evidence in the case record, in evaluating the functionally limiting effects of the impairment(s)." SSR 96-4p.

Here the ALJ followed this statutory and regulatory guidance when assessing Hearn's claims of pain. As we have noted this decision involved an assessment of conflicting and equivocal medical evidence. This evidence showed that the plaintiff's subjective complaints often were not fully supported by independent diagnostic evidence and testing. Since "there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged," 42 U.S.C. § 423(d)(5)(A), the results of these diagnostic tests, which did not confirm the type of abnormalities which would sustain the plaintiff's reports of pain, constituted "substantial evidence" supporting the ALJ's finding. Furthermore, Hearn's own testimony before the ALJ undermined her claim of disability on a number of scores, since Hearn indicated an ability to work during

her period of claimed disability, and described her medical conditions as generally well controlled through conservative medical treatment.

Similarly, the ALJ's assessment of the competing medical evidence rested upon sufficient "relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Johnson, 529 F.3d at 200, and, therefore, was supported by "substantial evidence." In this case, the ALJ correctly noted that the plaintiff's complaints were not consistently supported by medical treatment records, or by her own description of her medical and mental condition. The ALJ then determined that the consulting medical opinions which found that Hearn retained some residual capacity to work drew greater and more persuasive support from the evidence, than the opinions of the physician assistants, opinions which were at odds with various clinical findings. Given these conflicts in the evidence, the ALJ as fact-finder was entitled to give greater weight in this regard to this objective medical evidence, objective evidence which did not support these claims of total disability. Recognizing that the "substantial evidence" standard of review prescribed by statute is a deferential standard of review, Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004), which is met by less than a preponderance of the evidence but more than a mere scintilla of proof, Richardson v. Perales, 402 U.S. 389, 401 (1971), we find that the ALJ's decisions assessing this competing proof regarding the plaintiff's's ability

to function despite her various claimed physical impairments was supported by substantial evidence and may not now be disturbed on appeal.

### 2. The ALJ Appropriately Considered the Opinion Evidence

Hearn also argues that the ALJ erred in failing to give appropriate weight to the opinion of Hearn's treating physicians. While this argument is cast as a claim that the ALJ failed to follow the opinion of treating physicians regarding disability, in fact, the opinions offered here were not physician opinions but rather were the opinions of two physician assistants.

In this regard, the legal standards governing our assessment of an ALJ's evaluation of this type of evidence are familiar ones. In Morales v. Apfel, 225 F.3d 310 (3d Cir. 2000), the Court of Appeals for the Third Circuit set forth the standard for evaluating the opinion of a physician stating that:

> A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially "when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." Plummer [v. Apfel, 186 F.3d 422, 429 (3d Cir.1999)] (quoting Rocco v. Heckler, 826 F.2d 1348, 1350 (3d Cir.1987)); see also Adorno v. Shalala, 40 F.3d 43, 47 (3d Cir.1994); Jones, 954 F.2d at 128; Allen v. Bowen, 881 F.2d 37, 40-41 (3d Cir.1989); Frankenfield v. Bowen, 861 F.2d 405, 408 (3d Cir.1988); Brewster, 786 F.2d at 585. Where, as here, the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but "cannot reject evidence for no reason or for the wrong reason."

> Plummer, 186 F.3d at 429 (citing Mason v. Shalala, 994 F.2d 1058,
> 1066 (3d Cir.1993)).  The ALJ must consider the medical findings that
> support a treating physician's opinion that the claimant is disabled.  See
> Adorno, 40 F.3d at 48.  In choosing to reject the treating physician's
> assessment, an ALJ may not make "speculative inferences from medical
> reports" and may reject "a treating physician's opinion outright only on
> the basis of contradictory medical evidence" and not due to his or her
> own credibility judgments, speculation or lay opinion.  Plummer, 186
> F.3d at 429; Frankenfield v. Bowen, 861 F.2d 405, 408 (3d Cir.1988);
> Kent, 710 F.2d at 115.

Id. at 317-318.

Similarly, the Social Security Regulations state that when the opinion of a treating physician is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record," it is to be given controlling weight. 20 C.F.R. § 416.927(c).  When the opinion of a physician is not given controlling weight, the length of the treatment relationship and the frequency of examination must be considered.  The Regulations state:

> Generally, the longer a treating source has treated you and the more
> times you have been seen by a treating source, the more weight we will
> give to the source's medical opinion.  When the treating source has seen
> you a number of times and long enough to have obtained a longitudinal
> picture of your impairment, we will give the source's opinion more
> weight than we would give it if it were from a non-treating source.

20 C.F.R. § 416.927(c).

Additionally, the nature and extent of the doctor-patient relationship is considered. The Regulations state:

> Generally, the more knowledge a treating source has about your impairment(s) the more weight we will give to the source's medical opinion. We will look at the treatment the source has provided and at the kinds and extent of examinations and testing the source has performed or ordered from specialists and independent laboratories. For example, if your ophthalmologist notices that you have complained of neck pain during your eye examinations, we will consider his or her opinion with respect to your neck pain, but we will give it less weight than that of another physician who has treated you for the neck pain. When the treating source has reasonable knowledge of your impairment(s), we will give the source's opinion more weight than we would give it if it were from a nontreating source.

20 C.F.R. § 416.927(c).

Given this recognition of the great weight that should attach to the professional judgment of treating physicians, it is axiomatic that an ALJ must provide an adequate explanation for any decision which chooses to disregard a treating physician's findings regarding illness, impairment and disability.

However, it is also well-settled that:

> "[O]nly 'acceptable medical sources' can be considered treating sources ... whose medical opinions may be entitled to controlling weight." SSR 06–3p. "Acceptable medical sources" are further defined (by regulation) as licensed physicians, psychologists, optometrists, podiatrists, and qualified speech-language pathologists. 20 C.F.R. § 416.913(a). In contrast, nurse practitioners and physicians' assistants are defined as "other sources" whose opinions may be considered with respect to the severity of the claimant's impairment and ability to work, but need not

23

be assigned controlling weight. 20 C.F.R. § 416.913(d)(1).  Therefore, while the ALJ is certainly free to consider the opinions of these "other sources" in making his overall assessment of a claimant's impairments and residual abilities, those opinions do not demand the same deference as those of a treating physician.  See Mongeur v. Heckler, 722 F.2d 1033, 1039 n. 2 (2d Cir.1983) ("the diagnosis of a nurse practitioner should not be given the extra weight accorded a treating physician.").

Genier v. Astrue, 298 F. App'x 105, 108 (2d Cir. 2008).

Therefore, the "treating physician" rule only applies to physicians, and where a disability claimant's application is supported by statements from treating physician assistants, this rule does not apply.  Instead, the ALJ should consider the physician assistant's opinion as some "other source" opinion, which should be assessed, but not given controlling weight.  Applying these legal guideposts, it has been held that an ALJ may properly elect to following the consultative opinion of a non-examining physician who reviews a claimant's medical records over treating physician assistant opinions, provided the ALJ adequately explains the grounds for this determination.  See e.g., Weaver v. Astrue, 353 F. App'x 151, 152 (10th Cir. 2009); Wade v. Colvin, No. 13-CV-135, 2014 WL 1015719 (D. Co. 2014).

That is precisely what occurred in this case.  Presented with contrasting opinions from a non-examining physician and two treating physician assistants, the ALJ compared these opinions against the objective medical evidence, including Hearn's own testimony regarding her physical capabilities.  That assessment led the

24

ALJ to conclude that the consulting state physician's review more aptly captured Hearn's residual functional capacity, an assessment which was supported by substantial evidence in the record.  Since the physician assistant opinions were not entitled to controlling wight as a matter of law, and the ALJ's opinion adequately explained the grounds for affording greater weight to the non-examining doctor's opinion than the contrasting views of the physician assistants, this claim of error must also be denied.  See e.g., Weaver v. Astrue, 353 F. App'x 151, 152 (10th Cir. 2009); Wade v. Colvin, No. 13-CV-135, 2014 WL 1015719 (D. Co. 2014).

### 3.    The ALJ's Hypothetical Questions for  the Vocational Expert Were Appropriate

Finally, Hearn argues that the ALJ erred in formulating hypothetical questions for the vocational expert, since those questions did not adequately take into account Hearn's claims of disabling pain.  Since one of the principal contested issues in this setting relates to the claimant's residual capacity for work in the national economy, an ALJ must exercise care when formulating proper hypothetical questions to vocational experts who opine on the availability of work for a particular claimant. In this regard, the controlling legal standards are clear, and clearly defined.  As the United States Court of Appeals for the Third Circuit has observed:

> Discussing hypothetical questions posed to vocational experts, we have said that "[w]hile the ALJ may proffer a variety of assumptions to the

> expert, the vocational expert's testimony concerning a claimant's ability to perform alternative employment may only be considered for purposes of determining disability if the question accurately portrays the claimant's individual physical and mental impairments." Podedworny, 745 F.2d at 218.  A hypothetical question posed to a vocational expert "must reflect *all* of a claimant's impairments." Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir.1987) (emphasis added).  Where there exists in the record medically undisputed evidence of specific impairments not included in a hypothetical question to a vocational expert, the expert's response is not considered substantial evidence. Podedworny, 745 F.2d at 218 (citing Wallace v. Secretary of Health & Human Servs., 722 F.2d 1150, 1155 (3d Cir.1983)).

Burns v. Barnhart, 312 F.3d 113, 123 (3d Cir. 2002).

The formulation of a proper hypothetical question has a dual significance in social security proceedings.  First, as an evidentiary matter, it determines whether the vocational expert's opinion can be considered as substantial evidence supporting an ALJ finding. Burns v. Barnhart, 312 F.3d 113, 123 (3d Cir. 2002)("Where there exists in the record medically undisputed evidence of specific impairments not included in a hypothetical question to a vocational expert, the expert's response is not considered substantial evidence.")  However, more fundamentally, an erroneous or inadequate hypothetical question undermines the reliability of any residual function capacity determination since " objections to the adequacy of hypothetical questions posed to a vocational expert often boil down to attacks on the RFC assessment itself." Rutherford v. Barnhart, 399 F.3d 546, 554 n. 8 (3d Cir. 2005).

In examining this issue, though,"[w]e do not require an ALJ to submit to the vocational expert every impairment *alleged* by a claimant." Rutherford v. Barnhart, 399 F.3d 546, 554 (3d Cir. 2005)(emphasis in original).  Rather, the ALJ must simply "accurately convey to the vocational expert all of a claimant's *credibly established limitations."* Rutherford v. Barnhart, 399 F.3d 546, 554 (3d Cir. 2005), citing Plummer v. Apfel, 186 F.3d 422, 431 (3d Cir. 1999).  Therefore, in making this assessment and framing a proper hypothetical question for a vocational expert, "[l]imitations that are medically supported but are also contradicted by other evidence in the record may or may not be found credible—the ALJ can choose to credit portions of the existing evidence but 'cannot reject evidence for no reason or for the wrong reason' (a principle repeated in Mason v. Shalala, 994 F.2d 1058, 1066 (3d Cir.1993); Reg. § 929(c)(4))."  Rutherford v. Barnhart, 399 F.3d 546, 554 (3d Cir. 2005).

In this case, we find that the hypothetical questions posed by the ALJ fully comported with these legal requirements.  In this regard, we note that the ALJ posed multiple, graduated hypothetical questions to the VE, questions which encapsulated an array of physical limitations.  Fairly construed, many of these hypotheticals incorporated restrictions that took into account the debilitating effect of Hearn's claimed pain, by reducing her ability to stand, lift, and manipulate objects.  With one

exception, the VE opined that none of the array of hypothetical limitations would prevent Hearn from working, and the one set of limitations which the VE testified would be disabling were based upon a physician assistant's opinion that the ALJ expressly found to be unpersuasive.

We have previously concluded that the ALJ did not err in the assessment of this medical evidence. Therefore, we conclude that the ALJ's formulation of these hypothetical questions, which embraced an array of limitations, including some that the ALJ ultimately concluded were not credibly supported by the evidence, sufficiently developed the factual record in the case. Accordingly, a remand is not warranted on the grounds that the ALJ failed to adequately frame hypotheticals questions for the vocational expert.

In short, we find that the record in this matter shows that the claimant's complete medical history was adequately developed, but that medical history justified the ALJ's finding that Hearn was not disabled. Recognizing that substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999)," Johnson, 529 F.3d at 200; and consists of less than a preponderance of the evidence but more than a mere scintilla of proof, Richardson v. Perales, 402 U.S. 389, 401 (1971); we conclude that there was

substantial evidence which supported the ALJ findings in this case. Therefore, those findings should not be disturbed on appeal.

### III.   Conclusion

Accordingly, for the foregoing reasons, IT IS ORDERED that the Commissioner's decision is upheld, and the clerk is directed enter judgment for the defendant and close this case. An appropriate order will follow.

Submitted this 24th day of September, 2014.


*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge